IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Jermaine Blackwell | Crim. No. 5:18-cr-00999-TLW-2 |
| v. | |
| United States of America | **ORDER** |

This matter comes before the Court on Defendant Jermaine Blackwell's *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 765. For the reasons below, his motion is denied.

### PROCEDURAL BACKGROUND

Beginning sometime in September 2015 and continuing until at least June 2018, Blackwell and his codefendants, using telephones, engaged in a conspiracy to possess with intent to distribute heroin, marijuana, cocaine, and cocaine base in and around the low country area of South Carolina. *See generally* Presentence Investigation Report ("PSR"), ECF No. 736. In the resulting Indictment, Blackwell was charged with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and a kilogram or more of heroin (Count 1), using a communication facility to facilitate the commission of a felony under the Controlled Substance Act (counts 2 through 17), possession with intent to distribute a quantity of heroin and/or cocaine (counts 18, 19, and 23), and being a felon in possession of a firearm (count 24). *See generally* ECF No. 1.

On November 19, 2020, Jermaine Blackwell pled guilty to a lesser included offense of Count 1 of the Superseding Indictment, Conspiracy to Possess with Intent

to Distribute and to Distribute 500 Grams or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. ECF No. 669. In exchange for his plea, the Government agreed to dismiss the remaining counts of the Indictment. *See* ECF no 665. Specifically, the Government dismissed Counts 2 through 17, Counts 18, 29, and 23, and Count 24. ECF No. 668.

At the time of sentencing, based on Court rulings, the applicable guideline range in his case was to 108 to 135 months. ECF No. 731. Thereafter, the Court granted a four-level variance and sentenced Blackwell to 72 months imprisonment. *See* ECF Nos. 730, 731. This variance was granted based on the Court's consideration of the Defendant's physical condition and medical issues. *Id.*

Blackwell filed the present motion for compassionate release on March 3, 2022. ECF No. 765. The Government opposes Blackwell's motion. ECF No. 776. Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United*

States v. Edwards, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the Bureau of Prisons ("BOP"), so § 1B1.13 by its terms only applies to BOP motions. See United States v. McCoy, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in McCoy, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." Id. at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." Id. at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" McCoy, 981 F.3d at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); see also United States v. Kibble, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a reduction is a question first determined within the sound discretion of the district court.

## DISCUSSION

To provide context to both Blackwell's motion and the Court's decision, the Court will first review the offense conduct establishing Blackwell's present incarceration before reviewing the parties' arguments and conducting its own analysis of the issues at play.

I. THE OFFENSE CONDUCT

This case involves a drug distribution conspiracy between Blackwell and several codefendants that began in September 2015 and continued until at least June 2018. The conspiracy took place in the low country of South Carolina and involved the distribution of heroin, cocaine base, powder cocaine, and marijuana. The offense conduct is set forth in detail in paragraphs 23 – 73 of the PSR filed in this case. ECF No. 736. That conduct will be outlined here.

On September 4, 2015, the Drug Enforcement Agency ("DEA") received information indicating that a phone number registered to Jermaine Blackwell had been intercepted during Title III wiretap surveillance of a known drug dealer. PSR ¶ 24. Thereafter, the DEA began an investigation into Blackwell's suspected drug trafficking activities in South Carolina. On March 9, 2018, DEA agents investigating Blackwell obtained authorization for Title III wiretap surveillance. PSR ¶ 26. Through intercepted phone calls and text messages, DEA agents identified numerous coconspirators who worked with Blackwell to distribute powder cocaine, cocaine base, and heroin. *Id.*

On June 7, 2018, DEA agents monitoring Blackwell discovered that he was visiting a property in Orangeburg, South Carolina that was associated with drug

distribution activities. PSR ¶ 60. A DEA agent established physical surveillance of Blackwell before instructing an Orangeburg Public Safety Officer to conduct a probable cause traffic stop of Blackwell's vehicle. *Id.* A terry-frisk of Blackwell produced negative results, and a probable cause search of Blackwell's vehicle failed to uncover any contraband. *Id.* While speaking with Blackwell, an officer noticed a large bulge near Blackwell's groin. *Id.* This prompted officers to conduct another search of Blackwell's person, which revealed a 9" cylinder containing 250.4 grams of powder cocaine. *Id.* Accordingly, Blackwell was arrested and charged with trafficking cocaine. *Id.*

Following Blackwell's June 7, 2018 arrest, DEA agents executed a search warrant on June 19, 2018 at Blackwell's residence at 305 Meadow Street in Walterboro, South Carolina. PSR ¶ 61. During the search of Blackwell's residence, agents discovered a plastic bag containing a green powder substance, $10,960.00 in U.S. currency, a plastic bag containing 0.322 grams of heroin, an envelope with drug names written on it, two spoons containing white residue that field tested positive for cocaine, two digital scales, 12 cellular phones, one box of .223 ammunition, unspecified prescription pills, and a cigarette box containing a brown powder. *Id.*

Also on June 19, 2018, DEA agents executed a search warrant at Blackwell's stash house, which was located at 547 Johnsonville Road in Smoaks, South Carolina. PSR ¶ 62. During the search, agents discovered a black kilo press, plastic packaging bags, vacuum-seal bags, a heat-seal machine, and one clear plastic bag containing 1.4098 grams of marijuana. *Id.* After his arrest, Blackwell acknowledged that he possessed

powder cocaine on June 7, 2018, and that he had previously sold powder cocaine and a "little bit of heroin" in addition to being a marijuana dealer. PSR ¶ 63.

As noted, Blackwell was one of nine defendants named in a 24-count Superseding Indictment arising out of this conduct. ECF No. 379. He was named in twenty-one of the Superseding Indictment's twenty-four counts. *Id.* Ultimately, he pled guilty to a lesser included offense to Count One, Conspiracy to Possess with Intent to Distribute and to Distribute 500 Grams or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. In exchange for his plea, the Government agreed to drop serious charges against him, specifically Counts 2-19, 23, and 24.

## II.    THE PARTIES' ARGUMENTS

Before addressing the merits of Blackwell's motion for compassionate release, the Court will first review the arguments asserted by both Blackwell and the Government. *See* ECF Nos. 248 & 252.

### A.    *Blackwell's Arguments in Support of His Motion*

Blackwell requests that the Court grant his motion for compassionate release because he can establish "extraordinary and compelling" reasons in favor of his release as required by § 3582. ECF No. 765. Specifically, Blackwell asserts three grounds purportedly constituting "extraordinary and compelling reasons." *Id.* They are (1) "his individual medical conditions," (2) "the conditions caused by the deadly COVID virus," and (3) the Bureau of Prisons' pandemic response and its impact on the conditions of his confinement. *Id.* at 4–8.

### B.    *The Government's Opposition*

The Government opposes Blackwell's motion on two independent grounds. ECF No. 776. First, the Government asserts that Blackwell cannot establish that his preexisting medical conditions constitute "extraordinary and compelling reasons." *Id.* at 7. Second, and alternatively, the Government argues that even if Blackwell could meet the "extraordinary and compelling reason" standard the 18 U.S.C. § 3553(a) sentencing factors weigh against a reduction in his sentence. *Id.* The Government notes that Blackwell's role in the conspiracy was significant, including the maintenance of a stash house, in addition to his "significant criminal history." *Id.* The Government concludes that "The Defendant's sentence is necessary to protect the public from his further crimes and to afford adequate deterrence to criminal conduct." *Id.*

### III.   THE COURT'S REVIEW

The Court will first take up Blackwell's request for the appointment of counsel before moving on with its analysis of whether Blackwell has presented "extraordinary and compelling reasons" warranting a reduction in his sentence before turning to an analysis of the relevant § 3553(a) factors.

#### A.   *Appointment of Counsel*

Blackwell requests that the Court appoint him counsel in connection with this post-conviction § 3582 proceeding. Caselaw holds that "a criminal defendant has no right to counsel beyond his first appeal." *Coleman v. Thompson,* 501 U.S. 722, 756 (1991); *United States v. Coleman*, No. CR 3:01-506-JFA, 2020 WL 8258249, at *1 (D.S.C. July 30, 2020) ("As an initial matter, there is no general constitutional right

to appointed counsel in post-conviction proceedings."). Although due process mandates the appointment for certain post-conviction proceedings, a motion to reduce a sentence pursuant to § 3582(c) does not fit into this category. *United States v. Legree,* 205 F.3d 724, 730 (4th Cir. 2000). The Court has discretion to appoint counsel in proceedings under § 3582(c) if the interests of justice so require. *Id.*

In review of Blackwell's motion, the Court finds that he is capable—and has proven capable—of requesting compassionate release without the assistance of counsel and that he has not otherwise established that the interests of justice require the appointment of counsel in this case. The Court gives full consideration to Blackwell's position. Accordingly, the Court denies Blackwell's request for the appointment of counsel.

### B.  *Extraordinary and Compelling Reasons*

As noted, Blackwell has set forth three grounds which he believes are "extraordinary and compelling" reasons warranting a sentence reduction: (1) "his individual medical conditions," (2) "the conditions caused by the deadly COVID virus," and (3) the Bureau of Prisons' pandemic response.

> i.  *The threat of COVID-19, coupled with Blackwell's pre-existing medical conditions, forms a basis upon which the Court could find "extraordinary and compelling" medical reasons*

Blackwell asserts that he can meet the "extraordinary and compelling reasons standard" because of the threat presented by the COVID-19 pandemic when coupled with his asserted medical risks, specifically, obesity, hypertension, heart failure, asthma, and chronic kidney disease. ECF No. 795-3 at 108. Further, Blackwell suffers

from "multiple drug, environmental, and food allergies" which may prevent him from safely receiving the COVID-19 vaccination.[1] ECF No. 795-3 at 109. On this basis, the Court concludes that Blackwell has set forth a basis to satisfy the "extraordinary and compelling reasons" standard.

The caselaw governing this issue is increasingly clear, and courts have regularly held that, "The COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction." *United States v. Walker*, No. 3:20-CR-107-MOC-3, 2022 WL 1462270, at *3 (W.D.N.C. May 9, 2022); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). This holds especially true following the introduction of several effective COVID-19 vaccines. Although the Fourth Circuit has so far not established a *per se* rule that the availability of the COVID-19 vaccine precludes compassionate release, courts in this district have held that, "[f]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Henry*, No. CR 3:17-00640-MGL-4, 2022 WL 16541161, at *2 (D.S.C. Oct. 28, 2022) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021))

---

[1] Blackwell was offered, and refused, the Pfizer-BioNTech Vaccine on January 27, 2023 & May 16, 2022. Similarly, Blackwell refused the Moderna Vaccine on June 2, 2021. ECF No. 795-3 at 322. Each refusal was based on the possibility of a severe allergic reaction to the vaccine.

(internal quotations omitted); *United States v. Wolfe*, No. 6:18-CR-00582-DCC-1, 2022 WL 1204840, at *5 (D.S.C. Apr. 21, 2022); *United States v. Raap*, No. 8:18-CR-00678-DCC-1, 2021 WL 2328048, at *3 (D.S.C. June 8, 2021). Accordingly, "[f]ollowing full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced so that an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. McBride*, No. 2:09-CR-01223-DCN-1, 2023 WL 207330, at *3 (D.S.C. Jan. 17, 2023) (citations omitted). In view of this caselaw, the Court concludes that the risk of COVID-19 alone no longer provides a basis for inmates to establish "extraordinary and compelling reasons" pursuant to § 3582. However, the risks posed by COVID-19, coupled with serious pre-existing medical conditions, particularly when these conditions prevent individuals from safely receiving the vaccine, may form a basis to conclude that "extraordinary and compelling reasons" have been established.

The Court now turns to Blackwell's medical conditions, which the Court finds, in conjunction with the threat posed by the COVID-19 pandemic, rise to the level of establishing "extraordinary and compelling reasons." The Court has reviewed 387 pages of medical records provided by the BOP. ECF No. 795. These medical records confirmed that Blackwell is being treated regularly for a variety of health issues that include obesity, hypertension, heart issues, asthma, and kidney disease. However, the notes from Blackwell's clinical encounters document that his conditions are being managed and treated successfully by BOP Health Services. The medical records

reflect he has been seen by medical personnel, including doctors. It is appropriate to conclude his medical conditions are stable at this time. The Court reiterates that, independent of the COVID-19 pandemic, Blackwell's medical conditions would not warrant relief as the records provided by the BOP reflect that his numerous conditions are being managed properly.

However, having considered all the circumstances and arguments raised by Blackwell, the Court concludes that his current medical conditions and the COVID-19 pandemic, when considered together, establish an "extraordinary and compelling" basis for consideration under § 3582.

> ii. *The impact of the COVID-19 pandemic on the conditions of Blackwell's confinement is not an "extraordinary and compelling reason" in this case.*

In his § 3582 motion, Blackwell asserts ". . . measures that the B.O.P. and LSCI Butner have taken to prevent or slow the spread of the deadly pandemic have failed. The B.O.P. and LSCI cannot protect Mr. Blackwell."[2] ECF No. 765 at 4. In support of this, Blackwell explains that, because of the COVID-19 pandemic, ". . . the B.O.P. and in particular the staff at LSCI Butner have been overwhelmed." *Id.* at 4. In reviewing this argument, the Court concludes that Blackwell's "argument about his conditions of confinement does not establish a stand-alone reason for compassionate release." *United States v. Hall*, No. CR JKB-04-0323, 2022 WL 2105975, at *3 (D. Md.

---

[2] The Court notes that while Mr. Blackwell was originally housed at FCI Butner, he has been transferred to FCI Edgefield. As of the filing of this Order, FCI Edgefield is engaged in Level 1 Operations, indicating that the medical isolation rate at the facility is less than 2%, and the number of community positive cases is lower than 100 per 100,000 over the last 7 days. Federal Bureau of Prisons: FCI Edgefield, bop.gov/locations/institutions/edg/ (Last visited October 11, 2023).

June 10, 2022).

"Generally, 'harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently extraordinary and compelling to warrant compassionate release.'" *United States v. Hudson*, No. CR ELH-19-173, 2023 WL 3340066, at *8 (D. Md. May 10, 2023) (quoting *Hall*, 2022 WL 2105975, at *3); *see also United States v. Rios-Villanueva*, No. CR 5:11-21-JFA, 2023 WL 186804, at *5 (D.S.C. Jan. 13, 2023) ("[T]he court concludes that the defendant's reliance upon the threat of the COVID-19 pandemic, coupled with his complaints regarding the conditions of his confinement, fails to demonstrate extraordinary and compelling reasons for his release."). To establish "extraordinary and compelling reasons" on a condition of confinement claim based on the impact of the COVID-19 pandemic, a defendant is required to proffer "a confluence of circumstances unique to her case—and beyond just the harsh conditions of incarceration occasioned by the pandemic to justify compassionate release." *United States v. Hatcher*, No. 18 CR. 454-10 (KPF), 2021 WL 1535310, at *4 (S.D.N.Y. Apr. 19, 2021) (granting compassionate release based on a COVID-19 conditions of confinement claim because the defendant outlined how the "harsh conditions of incarceration occasioned by the pandemic" uniquely impacted her case). Here, Blackwell's motion only discusses how the COVID-19 pandemic has led to lockdowns at the BOP. He has not proffered "a confluence of circumstances unique to [his] case—and beyond just the harsh conditions of incarceration occasioned by the pandemic." *See Hall*, 2022 WL 2105975, at * 3 ("Here, Hall argues that the COVID-19 pandemic and the 'persistent lockdowns and ongoing

isolation from inmates and staff' have rendered his 'current incarceration . . . significantly more punitive and significantly less rehabilitative and familial' . . . While these challenges certainly warrant consideration, they do not, without more, establish extraordinary and compelling reasons for compassionate release."). Accordingly, the Court concludes that Blackwell does not establish "extraordinary and compelling reasons" based on the impact of COVID-19 on the conditions of his confinement. However, if the impact of COVID-19 is an "extraordinary and compelling reason" for relief, based on the reasons set forth in this order, no reduction of Blackwell's sentence is warranted.

### B. *The Court's review of the § 3553(a) factors*

Even where, as here, a district court finds that a defendant has established "extraordinary and compelling reasons," the district court "is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (cleaned up); *see also United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022) (noting that, even if a prisoner establishes "extraordinary and compelling circumstances," a district court is "not required to grant the defendant's motion for a sentence reduction."). Here, the Court concludes that, based on Blackwell's violent conduct and criminal history, the § 3553(a) factors weigh against

granting his request for relief.[3]

The Court cannot ignore the significance of Blackwell's criminal history, which placed him in criminal history category III. Blackwell was first convicted of a crime in 1994 and totaled 8 criminal convictions before his arrest in the relation to the instant offense. PSR ¶¶ 80 – 87. Among his numerous convictions are Obstructing a Law Enforcement Officer (1998), Criminal Domestic Violence (1998), Criminal Domestic Violence (1999), Obstructing Justice (2008), Trafficking in Ice, Crank, or Crack 10 Grams or More but Less than 28 Grams (2009), and Simple Possession of Marijuana (2013). *Id.* Notably, Blackwell was sentenced to 7 years of incarceration on the Trafficking conviction, though it was suspended to 4 years incarceration and 2 years probation. Despite being arrested twice in 1998, including one arrest for criminal domestic violence, Blackwell continued to engage increasingly serious crimes. Blackwell engaged in violent criminal conduct on at least two occasions, and committed a serious drug offense for which he served a prison sentence.

When weighing the § 3553(a) factors, it is appropriate to next review the facts surrounding Blackwell's instant offense. Blackwell was convicted of a serious offense. His offense conduct is set forth in considerable detail in paragraphs 23 – 73 of the PSR. The Court incorporates those paragraphs by reference into this Order. His conduct related to drug distribution was significant, as is outlined in the "Offense Conduct" section of both the PSR and this Order. The Court emphasizes the importance of considering Blackwell's offense conduct when considering his request

---

[3] The Court has balanced those factors given the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

for relief, as his offense conduct weighs heavily against release or a reduction in sentence. Notably, Blackwell pled guilty to Conspiracy to Possess with Intent to Distribute and to Distribute 500 Grams or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. ECF No. 666. At sentencing, the Court determined that the total converted drug weight attributable to Blackwell was 1,097.227 kilograms. ECF No. 731. This converted drug weight reflects the 2,000 grams of cocaine and 695.35 grams of heroin that Blackwell actually possessed and distributed. ECF No. 722. He also received a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. PSR ¶ 105. Notably, Blackwell was a significant distributor of cocaine and heroin. The Court concludes that "the nature and circumstances of the offense" weigh heavily against release.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against release for similar reasons. The circumstances of the instant offenses and Blackwell's prior criminal history demonstrate his propensity to engage in repeated criminal conduct and commit acts of violence. His actions also demonstrate a distinct disrespect for both the law and the safety of others.

The Court next turns to §§ 3553(a)(3)-(6), which analyzes the kinds of sentences available, the guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. In considering these factors, the Court gives great weight to the parties' plea negotiations and the resulting plea agreement. *See United States v. Bond*, 56 F.4th 381, 384 (4th Cir.), *cert. denied*, 143

S. Ct. 2596 (2023) noting that "[i]n its order denying compassionate release, the district court balanced the benefit of the plea agreement against the stacked minimum sentence for all charged counts, concluding the sentence remained a fair punishment for [the defendant's] conduct.").

Here, Blackwell pled guilty to Conspiracy to Possess with Intent to Distribute and to Distribute 500 Grams or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. ECF No. 665. Significantly, in exchange for his plea, the Government dropped numerous serious charges against him, specifically Counts 2-19, 23, and 24. *Id.* At sentencing, Blackwell argued for, and the Court granted, a 4-level downward variance due to Blackwell's significant health issues. ECF No. 731. Hence, Blackwell has already received a reduced sentence in light of his health conditions. Thus, when considering the instant offense conduct and Blackwell's previously noted prior convictions, there is a limited basis to conclude that reducing Blackwell's sentence below the initial sentence imposed would be "just punishment for his crimes." *Bond*, 56 F.4th at 384–85 ("We agree with the district court that (1) considering the plea agreement in this context reflected a 'respect for the law' and (2) reducing [the Defendant's] sentence below the initial Guidelines range wouldn't be 'just punishment' for [his] crimes."). As stated, the Court took Blackwell's medical condition into account at sentencing. Accordingly, the Court concludes that §§ 3553(a)(3)-(6) do not weigh in favor of a reduction in Blackwell's sentence.

Based on the above analysis, the Court finds that the § 3553(a) factors weigh against Blackwell's request for relief and concludes Blackwell would pose a risk to

the public if released. Blackwell committed a serious federal crime and has a significant prior record. Accordingly, the Court concludes a sentence reduction is not appropriate.

## CONCLUSION

The Court finds that Blackwell's motion for compassionate release should be denied, for the reasons stated and based on an analysis and balancing of the 3553(a) factors because, if released, he would pose a significant risk to the public. Accordingly, it is the judgment of the Court that Blackwell's motion for compassionate release, ECF No. 765, is **DENIED**.

**IT IS SO ORDERED.**

<i>s/ Terry L. Wooten</i><br>
Terry L. Wooten<br>
Senior United States District Judge

October 24, 2023
Columbia, South Carolina